# CRIMINAL RECORDER.

The People *vs*. Hiram Maxwell. *Grand Larceny*.

HIRAM MAXWELL was brought to the bar, charged with NEW-YORK, stealing from Andrew Colvin, a horse and gig, and plated Feb. 1823. harness, valued at $225, on the 18th of December, 1822.

The indictment against him was in the following words:

The People *vs.* Hiram Maxwell.

" City and County of New York, *ss*.* The jurors of the
" People of the State of New York, in and for the Body
" of the City and County of New York, upon their oath
" present: That Hiram Maxwell, late of the first Ward of
" the City of New York, in the County of New York
" aforesaid, laborer, on the eighteenth day of December
" in the year of our Lord one thousand eight hundred
" and twenty-two, at the first Ward of the City of New
" York, in the County of New York aforesaid, with force
" and arms, one horse of the value of one hundred dollars,
" one gig of the value of one hundred dollars, one plated
" harness of the value of twenty-five dollars, of the goods,
" chattels, and property of one Andrew Colvin, then and
" there being found, feloniously did steal, take, and carry
" away, to the great damage of the said Andrew Colvin,
" against the form of the statute in such case made and
" provided, and against the peace of the People of the
" State of New York, and their dignity."

An examining magistrate is compelled to caution a prisoner that he is bound to confess—that it should be voluntary—that it would be read in evidence against him, nor is it necessary it should so appear on the face of the depositions.

It appeared by the testimony of the prosecutor and

*This is a settled precedent. It was copied from the printed form on file in the Clerk's office.

NEW-YORK, others, that Maxwell came to the livery stable of the pros-
Feb. 1823. ecutor, at the corner of Grand street and Broadway, and
The People represented himself as being a Doctor. He called himself
*vs.* a certain Dr. Henry Wilson, who had important business
Hiram Max- in Albany to transact, &c.
well.

He bargained for Mr. Colvin's horse and gig, and
stated that he should be gone about eight or nine days.
He took them on the usual terms; and it was soon dis-
covered that the prisoner was not the person he repre-
sented himself to be : that his name was not Wilson, but
Maxwell.

He went to Albany and sold the horse and gig in that
city, and returned to New York with part of the money.
He was arrested by the activity of our police, and com-
mitted to Bridewell for trial.

Mr. Colvin testified that he had no other knowledge of
the prisoner, than that derived from the circumstance of
his coming to his stables to rent the horse and gig ; that
he never saw him afterwards, until he was arrested by the
police.

Mr. Edward Kennedy testified that he was an hostler in
the livery stables of Mr. Colvin; that the prisoner had
been two or three times to the stables, and had hired Mr.
Colvin's horse and gig, and had paid for them; that he
had never inquired who he was ; it not being customary,
when the hiring was only for part of a day ; but that
when he came to hire them to go to Albany he required
the address of the prisoner : he told him that his name was
Henry Wilson, that he was a Doctor, and was going to Al-
bany, and expected to be back in 8 or 10 days; that the
prisoner left him a memorandum, purporting that he board-
ed with a Mrs. Colefax, near the corner of Greenwich and
Fulton streets; that he took the horse and gig and sold

them in Albany, and returned to this city. He was arrest- <span>NEW YORK.</span>
ed, and in his examination he denied that he was the same <span>Feb. 1823.</span>
person who hired the horse of Mr. Colvin ; that he never <span>The People</span>
boarded at Mrs. Colefax's, and denied all the particulars <span>*vs.*</span>
relating to the transaction. <span>Hiram Max-</span>
<span>well.</span>

*Maxwell* was proceeding to read the examination, when *Price* requested that he might be permitted to examine the deposition before it was read to the jury. *Maxwell* objected. He contended that counsel had no right to look at the depositions: that if they were regular they could not prevent their being read · to the jury; that after he had proved they had been regularly taken, he had a right to read them to the jury, and no objection made by the counsel for the prisoner could prevent it.

The court decided that the counsel for the prisoner had a right to interrogate the District Attorney what facts he expected to prove by the examination, and by that means to call in question the legality of it, &c.

*Dr. Graham* then proceeded to state objections to the manner of taking the examination. He contended that it was the duty of the magistrate, who took the examination, to caution the prisoner that he was not bound to confess: 2. That his confession should be free and voluntary: 3. That the magistrate should inform him that his confession might be read against him on his trial: and lastly, that all this ought to appear on the face of the depositions. The Doctor went into an argument of great length and ability in support of each position.

The court observed that Mr. Colden, in the case of Goodwin, before the examination was taken, cautioned him that it should be free and voluntary, but that they knew of no law to compel the magistrate to caution the prisoner that his examination ought to be free. or that it

166

NEW-YORK,
Feb. 1823.

The People
*vs.*
Hiram Max-
well.

would be read in evidence against him, or that it ought to appear on the face of the depositions.

The court observed, that the examination now before the court appeared regular, at least nothing had yet been offered to convince them of the contrary. They therefore directed the examination to be read.

The jury found the prisoner guilty, without leaving the box.

*Note.—Larceny has been defined to be the wrongful taking and carrying away of " the personal goods of any one from his posses- " sion, with a felonious intent to convert them to the use of the " offender, without the consent of the owner." East, P. C. 553.

It is laid down by the law writers, there must be,

1. A taking from the possession.

2. A carrying away against the will of the owner.

3. A felonious intent to convert it to the offender's use.

1. With respect to the taking from the possession, it seems to be ad-
mitted, as a general rule, where the goods were acquired
lawfully, any misapplication or conversion afterwards
will not make the act felony : and in every case where the
original act was not a trespass, no construction can make
it felony.

To ascertain what possession or conversion will amount to larceny,
it is important to inquire, whether the owner parted with
his property or only the possession of them. See Hawk.
b. 1. c. 83 s. 6. 2 Leach, 870. 2 East, P. C. 563. 1
Leach, 344. 1. Leach 251. Hawk. b. 1. c. 33. s. 10. 1·
Leach, 270. 2 Leach, 835.

2. There must be a carrying away. The least carrying away
or asportation is sufficient. To snatch a diamond ear-ring
out of a lady's ear, which falls or is dropped in her hair, is
a sufficient asportation; 1 Leach, 320. To remove sheets
from a bed, and carry them into the next room. ibid,
222. To remove a package from one part of a wagon to

another.    Ibid, 236.    To cut a belt on which a purse is NEW-YORK.
hung, and it falls to the ground is felony.    Ibid, 322 n. b. Feb. 1823.

1. Hale. 583.    Tobias' case, City Hall Rec. vol. 1. p. 30. The People
It appeared in this case, that Tobias was detected stealing *vs.*
fifty pounds of beef in the Fly·Market: he was in the act, Hiram Max-
of taking it out of the cask, and laying it along side.    It well.
was decided that it was an asportation.

See, also, the case of James Phillips, and the authorities there
referred to.    Ibid, vol. 4 p. 177.

The carrying away must be against the consent of the owner.
1 Leach, 47.    2 Leach, 913.    2 Leach, 921, 922.


3. There must be a felonious intent.

And, therefore, goods taken possession of on a claim of right,
although that right may be unfounded, is not a felony.—
2 East P. C. 510.    Kel. 43.    1 Hale, 506, 7.    1 Leach, 413.
Nor by finding.    Hawk. b. 1. c. 33. s. 2.

But what acts constitutes this felonious intent, is a matter of
great difficulty.    Sir Willam Blackstone says, " the ordin-
" ary discovery of a felonious intent is where the party
" doth in clandestinely; or, being charged with the fact,
" denies it.    But this is by no  means the only criterion
" of criminality.    For, in cases that may amount to lar-
" ceny, the variety of circumstances is so great, and the
" complication thereof so mingled, that it is impossible to
" recount all those which may evidence a felonious intent,
" or *animum furandi;*  wherefore they must be left to the
" due and attentive consideration of the court and jury.
" Chitty, in his excellent treatise, vol. 1. p. 678, says,
" where the taking exists, but without fraud, it may amount
" only to a trespass.    This is also a point frequently de-
" pending on circumstantial evidence, and to be left to the
" jury's decision."    The doctrine of constructive felony
is one of great importance and difficulty.    What act shall
amount only to a trespass, or shall be adjudged a felony,
depends more upon the peculiar circumstances of each
case, than upon any established rule.    And it cannot but

NEW-YORK,
Feb. 1823.

The People
*vs.*
Hiram Max-
well.

afford matter of satisfaction, that a jury must decide upon each case of constructive larceny. It is for them to say, in all cases of doubt, where the goods came into the possession of the prisoner by the consent of the owner, whether the act charged against him, is felony or not.

The jury are the proper judges, whether the prisoner acted *animo furandi*, or not. And it is here where circumstantial evidence operates, perhaps, more extensively than in any other branch of crime.

The following cases will show the distinction in committing the offence between felony and trespass. If two men take horses from a common, and ride with them a considerable distance, then leave them at inns, with directions to feed and take care of them, and afterwards are taken walking still farther into the country, it will be left to the jury to say, whether they intended to return and remove the horses, or to leave them there for their own purposes, having used them; for if they find the former, it will be felony, if the latter, trespass. *Chitty, C. L. vol. 3. p. 679.*

If, after goods are sold, and earnest, or the whole sum paid, a person takes out part, though before actual delivery to the buyer, or to any to convey to him; this is grand, or petit larceny, according to the value taken out, though the goods may be remaining in the warehouse of the seller; for after the sale is completed by earnest paid, the possession of the seller is the possession of the buyer. 14 Geo. 3. K. B. Lofft. 601.

But the greatest intricacy and difficulty exists, where the prisoner had the actual possession of the goods at the time of the appropriation; when the *animus furandi* began.— It seems in such a case, to be no felony to convert the goods to his own use : as, where a house was on fire, and a neighbor took some of the goods, apparently to save them from the flames, and afterwards converted them to his own use. It was decided to be no felony, the original taking being thought honest and lawful. 1 Leach, 411.

But if, from all the circumstances attending the case it appear

the prisoner acted *animo furandi* in obtaining the posses-
sion of the goods, it will be felony : as where a prisoner ob-
tained a horse under false pretence of hiring it for a day,
and immediately sold it, he was holden guilty of felony,
because the jury found that he acted *animo furandi* in mak-
ing the contract. 1 Leach, 212.

If a person hires a post-chaise for an indefinite length of time, and converts it to his own use, he may be convicted of larceny, if his intent in obtaining it was felonious. 1 Leach, 420.

In Angustus M. Stone's case, City Hall Rec. vol. 2. p. 157. there is this syllabus. Where an hostler, having charge of a horse, is sent by the owner's agent with the horse to a man at a distance, who had entered into a negotiation for the purchase of the horse with the agent, and such hostler, having no authority to sell the horse, or receive the money, nevertheless receives a check, draws the money, and converts it to his own use : it was left to the jury to judge, from all the circumstances of the case, whether, at the time the prisoner took such horse from the agent, he intended to convert the avails thereof to his own use.

See, also, Jesse Dow's, and George Lloyd's cases. Ibid. vol. 3. p. 129.

John O'Terr's case, Ibid. vol. 3. p. 154. O'Terr was indicted for a petit larceny, for stealing two handkerchiefs and other articles. He purchased them at a store, and told the storekeeper to send his boys home with him, and he would pay for them ; after they left the store he eluded the boys. The Court told the jury it was a constructive felony, provided they were of opinion, that at the time the prisoner obtained the goods he harbored an intent to convert them to his own use without paying the owner.